

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 1036 | DATE | April 22, 2002 |
| CASE TITLE | Juan Aguilar  v  Larry G. Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, plaintiff's motion for summary judgment is denied and defendant's motion to is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | APR 2 3 2002 date docketed | 13 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN AGUILAR, | ) |
| Plaintiff, | ) |
| v. | ) No. 01 C 1036 |
| | ) Judge Robert W. Gettleman |
| LARRY G. MASSANARI, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Juan Aguilar seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner" and the "SSA," respectively) denying his application for Disability Insurance Benefits under Title II of Social Security Act, 42 U.S.C. §§416(i) and 423.[1] In cross-motions for summary judgment, claimant asks the court to reverse the ALJ's denial of benefits, and the Commissioner asks the court to affirm that decision. For the reasons set forth below, the court denies claimant's motion and grants the Commissioner's motion.

## THE ALJ'S DECISION[2]

Social Security regulations required the ALJ to conduct a five-step test to determine whether claimant is disabled. 20 C.F.R. §404.1520. This five-step inquiry is as follows: (1) Is claimant

---

[1] Administrative Law Judge John M. Slater (the "ALJ") denied claimant's request for Social Security benefits. The SSA Appeals Council ("the appeals council") denied claimant's request for a review of that decision, making it the final decision of the Commissioner. See 20 CFR §416.1481; Herron v. Shalala, 19 F.3d 329, 332 (7th Cir. 1994). Claimant initiated this civil action for judicial review pursuant to 42 U.S.C. §405(g).

[2] Because claimant takes issue with only discrete parts of the ALJ's decision, the court will outline those portions generally below and set forth the facts relevant thereto more fully in the discussion section of this opinion.

currently participating in substantial gainful activity? (If so, his claim is disallowed); (2) Is claimant's impairment severe? (If not, his claim is disallowed); (3) Does claimant's impairment meet or equal one on the list of specific impairments? (If so, claimant is automatically deemed disabled); (4) Is claimant able to perform his past relevant work? (If so, his claim is denied); and, (5) Is claimant able to perform any other work in the national economy? (If not, claimant is deemed disabled). See id.; Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993). At the fifth step, the SSA has the burden of proof, and claimant's physical impairments, age, education, and work experience are taken into consideration. See Paige v. Bowen, 695 F. Supp. 975, 977-78 (N.D.Ill.1988).

In the instant case, the ALJ found, and claimant does not contest, that he was not participating in substantial gainful activity, that his impairment (which the ALJ found to be a degenerative back disorder) is severe, that his impairment does not meet or exceed one on the list of specific impairments set forth in 20 C.F.R., Part 404, Subpart P, Appendix 1, and also that claimant is not able to return to his past relevant work in construction. Thus, the dispute in the instant appeal centers on the ALJ's decision that claimant has the residual functional capacity to perform the exertional demands of sedentary work pursuant to 20 C.F.R. §404.1567(a). Specifically, the ALJ found that, based on claimant's medical records and his credible testimony at trial, claimant is "not able to lift and carry more than ten pounds, or to stand and/or walk for prolonged periods," but that those limitations do not impair his ability to carry out the exertional demands of sedentary work.

This conclusion led the ALJ to apply the Medical-Vocational Guidelines of Appendix 2 of the SSA regulations set forth in 20 C.F.R., Subpart P, Regulation No. 4 ("the Grid"), and to conclude that:

Born March 11, 1956, the claimant is now 42 years old. For the purpose of this decision, he is a "younger individual" within the meaning of the regulations. [Claimant] has a seventh grade education, defined as "limited." He is illiterate in the English language. The claimant has an unskilled work background. Pursuant to Medical Vocational Rule 201.23[,] a finding of "not disabled" is applicable.

For all the foregoing reasons the [ALJ] concludes that, [Claimant] retains the capacity to make an adjustment to work which exists in significant numbers in the national economy. Because the claimant is capable of making an adjustment to other work, he is not disabled within the meaning of the Social Security Act. As the claimant is not under a disability, he is not entitled to receive Disability Insurance Benefits by virtue of his application of February 19, 1997.

## STANDARD OF REVIEW

The question before the court is not whether claimant is actually disabled, but rather whether substantial evidence supports the ALJ's conclusion that claimant is not disabled. See Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987); Pope, 998 F.2d at 480; Wolfe v. Shalala, 997 F.2d 321, 322 (7th Cir.1993). "Substantial evidence" means evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). In making this determination, the court reviews the entire record but refrains from deciding the facts anew, weighing the evidence again, or substituting its own judgment for that of the ALJ. See Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1985). Further, with respect to any credibility determination made by the ALJ, the court usually will not upset that determination so long as there is some support for it in the record and it is not patently wrong. Herron, 19 F.3d at 335.

## DISCUSSION

Claimant asks the court to reverse the ALJ's denial of benefits because he failed to analyze properly claimant's mental impairment and the effects of his drug therapy. Claimant also argues that the ALJ's decision must be reversed because substantial evidence does not support

3

the ALJ's conclusion that claimant is capable of performing a full range of sedentary work. The court will address each of claimant's contentions in turn.

## I. DID THE ALJ FAIL TO ANALYZE PROPERLY CLAIMANT'S MENTAL IMPAIRMENT?

Claimant argues that the ALJ's decision erroneously leaves out claimant's testimony regarding the side effects he suffers from taking 20 milligrams of Paxil daily for his diagnosed depression. Claimant notes in support of this argument that he testified that he sleeps for two hours every morning after taking this medication. According to claimant, the effects of drug therapy must be taken into consideration in evaluating an applicant's overall impairment.

The court's review of the ALJ's decision indicates that he did in fact take into consideration claimant's testimony regarding the side effects he suffered from taking Paxil. In summarizing claimant's complaints, the ALJ noted that claimant "said he is depressed" and that he "takes Paxil for depression," and also that claimant "stated that his medication makes him sleepy." The ALJ later added that "claimant alleged that his medications cause sleepiness, and that pain keeps him awake at night." The ALJ decided, however, to give little weight to these complaints, "since there is no pattern of such complaints" in claimant's medical history. The ALJ found that, "A review of the medical evidence shows a lack of complaint from the claimant regarding side-effects from medication, and constant pain, not relieved with medication." Thus, it is clear that the ALJ did take into consideration claimant's complaints of pain, but that discounted those complaints upon finding that claimant's "statements concerning his impairments and their impact on his ability to work are not entirely credible."

Also included in the ALJ's credibility determination was his finding that claimant's

4

testimony regarding his physical capabilities was not believable because it was inconsistent with the record as a whole. The ALJ reasoned:

> [T]he undersigned finds that claimant's assertion that he is unable to lift anything at all, and that he is incapable of doing anything, is inconsistent with the record as a whole. Specifically, the claimant's statements regarding his functional abilities . . . appear to be more in line with what could reasonably be expected. He reported that he had difficulty bending, and standing and walking for long periods of time. The claimant also stated that he could not lift heavy objects, which is more reasonable than being unable to lift anything. The lack of ability to do these things is not inconsistent with the ability to perform sedentary work activity, which requires no significant bending, or prolonged standing and walking.

The ALJ's credibility determination also addressed claimant's reliance on his carpal tunnel syndrome diagnosis. The ALJ wrote:

> As to claimant's allegation of difficulty with his hands, the medical evidence shows only that an EMG in September 1997 showed mild to moderate symptoms on the right and mild on the left. There was no cervical radiculopathy. And, there is no evidence of further medical intervention regarding carpal tunnel. Consequently, the undersigned is not convinced that the claimant has any problems related to carpel [sic] tunnel, or hand problems.

The ALJ's credibility determination is proper under the applicable SSA regulations so long as it contains "specific reasons for the finding on credibility, supported by the evidence in the case record," and it is "sufficiently specific to make clear to [claimant] and to any subsequent reviewers the weight the [ALJ] gave to [claimant's] statements and the reasons for that weight." Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ's credibility determination in the instant case meets these standards because it contains with sufficient specificity the ALJ's reasons for discounting claimant's credibility (that his testimony regarding the effects of his depression medication, his inability to lift objects or to work generally, and his reliance on his carpal tunnel syndrome diagnosis is not supported by the record), and it identifies the effect of

5

that credibility determination (that he placed little weight on those factors and, as a result, found claimant to be capable of performing sedentary work). Also, based on the court's review of the record in the instant case, the ALJ's credibility determination is sufficiently supported such that it cannot be said to be "patently wrong." Id.; Herron, 19 F.3d at 335.

With respect to the question of whether claimant's medical history shows a pattern of complaints by claimant regarding the side-effects of his medication, the court notes that in the "Disability Report - Adult" that claimant provided for the SSA, he listed the medications he was taking at the time (pain killers and Paxil) and the reason he was taking each (for his back pain and for his depression) and, under the heading "Side Effects," he responded "None." Likewise, a psychiatric report prepared by Dr. Victor Uribe ("Dr. Uribe") following his examination of claimant on October 30, 1997, states that, "Following my inquiry, [claimant] denied problems with sleep." It is also worth noting that absent from claimant's medical records is any indication that he sought alternative medications due to the sleepiness he allegedly experienced taking Paxil.

As for the question of claimant's physical capabilities, according to the "Activities of Daily Living Questionnaire" claimant submitted to the SSA, he is capable of performing light household chores such as dusting, laundry, and superficial cleaning, he leaves his home as needed, and he can operate a motor vehicle (though not for long periods at a time). Further, as indicated by the ALJ, the "Disability Report" that claimant submitted to the SSA contradicts claimant's testimony during the hearing; the report indicates that while claimant cannot "stand or walk for long periods of time," it is "very hard for [him] to bend," and he cannot "lift heavy

objects," he is not incapable of performing the physical tasks associated with sedentary work.[3]

Finally, with regard to claimant's carpal tunnel syndrome claim, there is no indication in the record that claimant complained about or received treatment for that condition following his original diagnosis. In fact, claimant's "Disability Report" indicates that he has not experienced any change in his ability to use his hands since his disability onset. Claimant did testify that he has "difficulty with compression with [his] hands," but what he meant by that is not exactly clear. What is clear is that the record shows no indication that claimant reported to the SSA that his physical limitations include an inability to grasp or manipulate items using his hands. Thus, as demonstrated by all of the above, the court concludes that the ALJ's credibility determination was supported by the record and is therefore not patently wrong.

Claimant next argues that the ALJ's analysis of his depression does not include reference to his initial diagnosis of "major depression; single episode, reactive to accident" by Dr. Argelia Prieto ("Dr. Prieto") in May 1997. According to claimant, under Diaz v. Charter, 55 F.3d 300, 307 (7th Cir. 1995), and other prior Seventh Circuit cases, this failure indicates that the ALJ selected and discussed only evidence that favored his ultimate conclusion.

Once again the court disagrees. The ALJ's decision reflects that although he did not specifically mention Dr. Prieto's diagnosis, it was considered by the ALJ. Specifically, the ALJ

---

[3] SSA regulation 20 C.F.R. §404.1567(a) provides that sedentary work is:

[W]ork [that] involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

7

noted that claimant was not under the care of a psychiatrist, and discussed the opinion of Dr. Victor Uribe ("Dr. Uribe"), who examined claimant after Dr. Prieto and concluded that claimant had a less serious form of depression called dysthymic disorder. The ALJ also referenced the review conducted by Dr. Helen Appleton ("Dr. Appelton"), who concluded that claimant's mental impairments were not severe. The ALJ wrote:

> In reaching this conclusion, the undersigned has considered the claimant's testimony regarding depression. He said he feels insecure. Claimant takes Paxil, an antidepressant, but he receives no psychiatric treatment. The consultant psychiatrist, [Dr. Uribe], who examined claimant on October 30, 1997, found only a dysthymic disorder. The claimant demonstrated no psychotic symptoms. He stated that he takes care of his needs and the needs of his family. Claimant reported having a good relationship with his wife, children, and family members in general. Claimant had no impairment of perceptions or of thought process. Claimant's memory, reasoning, concentration, and attention were all adequate .... After a thorough review of all of the evidence, [Dr. Appleton] was of the opinion that the claimant did not have a severe mental impairment .... The undersigned finds that the opinion of medical reviewer is to be given controlling weight. [Dr. Appleton's] conclusions are supported by acceptable medical evidence and is [sic] found to be consistent with the evidence as a whole.

This analysis is not deficient under Diaz as claimant suggests. In fact, Diaz is instructive in evaluating the analysis performed by the ALJ in the instant case. The claimant in Diaz argued that because the ALJ did not place equal weight on each of the findings of one physician, he selectively analyzed only that evidence that supported his ultimate conclusion. See 55 F.3d at 307. The Seventh Circuit noted that, "An ALJ may not select and discuss only that evidence that favors his ultimate conclusion, [and] must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." Id. The Diaz court also explained that, "An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required." 55 F.3d at 307. Applying these standards to the facts in Diaz,

however, the Seventh Circuit concluded that "Mr. Diaz's challenge goes to the ALJ's weighing of Dr. Cascino's medical evidence," and held that the ALJ in Diaz was entitled to consider one portion of a doctor's report less significant than other portions, explaining that "we shall not reweigh the evidence on appeal." 55 F.3d at 307. The Diaz court elaborated (Id.):

> "Moreover, aside from the fact that an ALJ need not provide a complete written evaluation of every piece of testimony and evidence, [Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam)], the ALJ's rejection is consistent with his specific finding that Mr. Diaz's claims of residual capacity and his subjective complaints of pain were not credible."

Under Diaz, the fact that the ALJ failed to mention Dr. Prieto by name or to refer to her diagnosis explicitly in his written decision does not mean that he disregarded that evidence. As explained in Diaz, the ALJ need not provide a complete written evaluation of every piece of testimony and evidence. Instead, Diaz requires that the ALJ articulate his analysis clearly enough that the court is able to retrace his reasoning. The ALJ in the instant case did that. The ALJ's ruling indicates that he ultimately gave controlling weight to the conclusions of Dr. Appleton, which he found to be "supported by acceptable medical evidence . . . and consistent with the evidence as a whole." If the ALJ had disregarded Dr. Prieto's diagnosis, as claimant argues, there would be no reason for him to explain that he was giving controlling weight to the opinion of Dr. Appleton.

Instead, it appears that claimant's argument, like that made by the claimant in Diaz, goes to the weighing of Dr. Prieto's diagnosis. This conclusion is supported by the fact that claimant attempts to discredit the ALJ's reliance on Dr. Appleton's decision because she has a Ph.D. rather than an M.D., like Dr. Prieto. Even if not a plea for this court to reweigh evidence, which it will not do, claimant's argument is not persuasive. Dr. Appleton's doctorate in psychology

9

qualifies her to render opinions regarding the severity of claimant's depression and, at any rate, her opinion coincides with that of Dr. Uribe, who has an M.D. Claimant also argues that it is was inappropriate for the ALJ to give Dr. Appleton's opinion controlling weight because Dr. Appleton did not personally examine claimant like Dr. Prieto. The court disagrees. Under 20 C.F.R. 404.1527(d)(2), the ALJ is directed to evaluate conflicting medical opinions and decide, based on a number of factors, which opinion should be given the most weight.[4] The fact that Dr. Appleton did not personally examine claimant does not prevent the ALJ from giving her opinion controlling weight. See DeFrancesco v. Bowen, 867 F.2d 1040, 1043 (7th Cir. 1989).

Thus, because the court can trace the path of the ALJ's reasoning, and because the court cannot reweigh evidence weighed by the ALJ, the court concludes that the ALJ's articulation of his decision meets, and likely exceeds, the minimum standards set forth in Diaz.

## II. IS THE ALJ'S DECISION SUPPORTED BY SUBSTANTIAL EVIDENCE?

Claimant next asserts that the ALJ's conclusion as to claimant's residual functional capacity is not supported by substantial evidence because his application of the Grid was inappropriate. Claimant makes two points to support this argument. First, claimant argues that his non-exertional impairments are too severe for the ALJ to apply the Grid—a position that he argues is supported by the Seventh Circuit's decision in Walker, 834 F.2d at 640-41. As factual support for the application of Walker to the instant case, claimant points to his bilateral carpal

---

[4] Those factors include: the length of the treatment relationship between each doctor and claimant; the frequency of the examinations performed by each doctor; the nature and extent of that treatment relationship; the degree to which each doctor's opinion is supported by medical signs and laboratory findings; the consistency of the opinion with the record as a whole; and whether the opinion was from a specialist. See 20 C.F.R. § 404.1527(d)(2) through (d)(5).

tunnel syndrome diagnosis and argues that, "The repetitive use of [claimant's] hands required by work at the sedentary exertional level would aggravate" claimant's condition. Claimant adds that, "The ALJ's decision fails to provide any analysis concerning the use of plaintiff's hands on a 'regular and continuing basis,' and the residual functional capacity must include a discussion of the individual's abilities on that basis."

Walker teaches that whether it is appropriate to use the Grid is a question of fact. See id at 641. The mere "fact that a claimant suffers from a non-exertional impairment does not . . . immediately preclude utilization of the grid"; it is up to the ALJ to determine whether claimant's "non-exertional impairments are severe enough to limit the abilities of the claimant substantially." Id. This court will uphold the ALJ's use of the Grid if there is "reliable evidence of some kind that would persuade a reasonable person that [claimant's] limitations . . . do not significantly diminish the employment opportunities otherwise available" to him. Id.

In the instant case, the ALJ found claimant's reliance on his alleged hand problems to be incredible based on the fact that he never sought or received treatment for carpal tunnel syndrome after being initially diagnosed. The record supports this finding, as explained above, and thus the court will not disturb it. Because the ALJ decided not to place weight on claimant's alleged hand problems, it naturally follows that the ALJ concluded that those problems were not severe enough to significantly diminish the employment opportunities otherwise available to claimant in the area of sedentary work. This court finds that conclusion, along with the evidence supporting it, sufficiently reliable to persuade a reasonable person that claimant's carpal tunnel syndrome diagnosis does not significantly diminish his employment opportunities.

Claimant also attacks the ALJ's use of the Grid based on his testimony that he is "taking

11

medication for depression and anxiety that produces side effects." To support this argument, claimant points to Dr. Prieto's report, which indicates that claimant "often" experiences "deficiencies of concentration; persistence or pace resulting in failure to complete tasks in a timely manner." In addition, claimant notes that he testified that he has "great difficulty staying in the same position for any length of time," and argues that when a claimant asserts such a claim, "vocational expert, vocational dictionary, or other appropriate guide or source [must be] consulted to determine whether there are sufficient jobs in the national economy that the applicant is physically capable of holding," citing the Seventh Circuit's decisions in Peterson v. Chater, 96 F.3d 1015, 1016 (7th Cir. 1996), and DeFrancesco, 867 F.2d 1040, in support.

With respect to claimant's reliance on his diagnosed depression, as explained above the ALJ found claimant's testimony that he suffers from Paxil side-effects to be incredible. Because the record supports the ALJ's finding in that respect, the court will not disturb it. Thus, just as with claimant's carpal tunnel syndrome, the fact that the ALJ decided not to place weight on claimant's alleged Paxil side-effects indicates that the ALJ concluded that those problems were not severe enough to significantly diminish the employment opportunities otherwise available to claimant in the area of sedentary work. While it is true that Dr. Prieto's report indicated that claimant "'often' experiences deficiencies of concentration[,] persistence or pace resulting in failure to complete tasks in a timely manner," as explained above the ALJ decided to place greater weight on the opinion of Dr. Appleton, who found that claimant "'seldom' experiences deficiencies in concentration, persistence or pace." Having found the ALJ's decision to be sufficiently articulated and having found claimant's attacks thereon to improperly urge the reweighing of evidence, this court declines to upset that determination. Thus, the court

12

concludes that the ALJ's determination of the severity of claimant's depression, along with the evidence supporting that determination, is sufficiently reliable to persuade a reasonable person that claimant's mental state does not significantly diminish his employment opportunities.

This brings the court to claimant's argument that because he testified that he is unable to remain in the same position for any length of time, the ALJ should have heard testimony from a vocational expert rather than relying on the Grid to determine whether claimant is able to perform work in the national economy. Claimant cites Peterson and DeFrancesco for this proposition. In Peterson, the Seventh Circuit held that where an ALJ concludes that a claimant is unable to sit, stand, and walk for prolonged periods of time, it is antithetical to also conclude that the claimant is capable of performing sedentary or light work because sedentary work requires prolonged sitting, and light work requires prolonged standing and walking. 96 F.3d at 1015-16. Thus, the Seventh Circuit remanded Peterson for further review by the SSA and noted that if the SSA again finds that the claimant is incapable of prolonged sitting, standing, and walking, it will have to consult a "vocational expert, vocational dictionary, or other appropriate guide or source . . . to determine whether there are significant jobs in the national economy that the [claimant] is physically capable of holding to justify a conclusion that he is not disabled." Id. at 1016.

Similarly, in DeFrancesco, the Seventh Circuit found that the evidence indicated that the claimant could not sufficiently operate foot controls, making him incapable of performing some but not all of the jobs within the range of work that the ALJ found him capable of performing. 867 F.2d at 1044. The Seventh Circuit explained that where an individual's exertional residual functional capacity does not coincide with the definition of any one of the ranges of work as defined in the regulations, the claimant's occupational base becomes unclear. Id. In such

instances, the Seventh Circuit ruled, ALJs must "get off their grids and hear testimony by a vocational specialist concerning whether there are enough jobs that this claimant can actually do to warrant a conclusion that his medical condition is not totally disabling." Id.

The instant case is distinguished from Peterson and DeFrancesco, however, because here the ALJ did not conclude that claimant is incapable of performing any of the tasks required for jobs within the sedentary range of work. Instead, the ALJ noted that claimant "reported that he had difficulty bending, and standing and walking for long periods of time," and then concluded that:

> The evidence establishes that the claimant retains the residual functional capacity to perform the exertional demands of sedentary work, or work which is generally performed while sitting and never requires lifting in excess of ten pounds (20 C.F.R. §404.1567). The evidence supports a finding that the claimant is not able to lift and carry more than ten pounds, or stand and/or walk for prolonged periods.

The ALJ's finding of claimant's residual functional capacity indicates no limitation on claimant's ability to perform sedentary work, which is defined as primarily involving sitting and occasionally requiring walking and standing. See 20 C.F.R. §404.1567(a). Thus, because the ALJ did not find claimant incapable of sitting for prolonged periods of time, and found claimant capable of standing and walking occasionally, the ALJ need not have based his decision on the testimony of a vocational expert under Peterson, 96 F.3d at 1015-16. Likewise, because there is no requirement within the sedentary range of work that individuals be able to remain in the exact same position for any length of time, claimant's need to change positions frequently does not erode his occupational base within the sedentary range of work, making the ALJ's use of the Grid appropriate under DeFrancesco, 867 F.2d at 1044. Thus, the court concludes that the ALJ's determination of claimant's nonexertional residual functional capacity, along with the evidence

14

supporting that determination, is sufficiently reliable to persuade a reasonable person that claimant's physical limitations do not significantly diminish his employment opportunities.

Based on all of the above, the court concludes that the ALJ's application of the Grid was appropriate and, as a result, his decision based on that application is supported by substantial evidence. Heckler v. Campbell, 461 U.S. 458, 462 (1983) (finding that proper use of the Grid satisfies the SSA's burden to demonstrate the existence of a significant number of jobs in the national economy which a claimant can perform); 42 U.S.C. §405(g).

## CONCLUSION

For the reasons explained above, claimant's motion for summary judgment is denied and the Commissioner's motion is granted.

**ENTER:** **April 22, 2002**

_____
**Robert W. Gettleman**
**United States District Judge**